**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TAMRA M. WINBUSH,**

                **Plaintiff,**            **7:12-cv-427**
                                                 **(GLS)**
        v.

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                **Defendant.**
_____

**APPEARANCES:**                      **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Conboy, McKay Law Firm           LAWRENCE D. HASSELER,
307 State Street                         ESQ.
Carthage, NY 13619

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN    JEREMY A. LINDEN
United States Attorney              Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

## I. **Introduction**

Plaintiff Tamra M. Winbush challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g). (*See* Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Winbush's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

## II. **Background**

On January 19, 2010, Winbush filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging disability since December 5, 2008. (*See* Tr.[1] at 50, 57, 115-26.) After her applications were denied, (*see id.* at 64-69), Winbush requested a hearing before an Administrative Law Judge (ALJ), which was held on June 30, 2011, (*see id.* at 27-49, 72). On July 12, 2011, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*See id.* at 1-4, 6-26.)

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (*See* Dkt. No. 8.)

Winbush commenced the present action by filing her Complaint on March 9, 2012 wherein she sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (*See* Dkt. Nos. 7, 8.) Each party, seeking judgment on the pleadings, filed a brief. (*See* Dkt. Nos. 14, 20.)

### III. Contentions

Winbush contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (*See* Dkt. No. 14 at 13-20.) Specifically, Winbush claims that the ALJ erred in: (1) finding that her lower back pain and musculoskeletal impairments were not severe; (2) failing to consider that her psychogenic non-epileptic seizure disorder met the requirements of listing 12.07; (3) failing to identify the significant limitations caused by her psychogenic seizure disorder, depression, and panic disorder and include those limitations in his residual functional capacity (RFC) determination; and (4) relying on the Medical-Vocational Guidelines to establish that there are jobs in the national economy that she is capable of performing. (*See id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his

decision is also supported by substantial evidence. (*See* Dkt. No. 20 at 4-19.)

## IV. Facts

The court adopts the parties' undisputed factual recitations. (*See* Dkt. No. 14 at 2-11; Dkt. No. 20 at 1.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Severity Determination

First, Winbush claims that the ALJ failed to properly assess the severity of her low back pain and other musculoskeletal complaints. (*See*

---

[2] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims. As review under both sections is identical, parallel citations to the Regulations governing SSI are omitted.

4

Dkt. No. 14 at 13-15.)  The Commissioner counters, and the court agrees, that as the ALJ found that Winbush suffered other severe impairments, and the sequential analysis continued, any error at step two is harmless.  (*See* Dkt. No. 20 at 4-7.)

At step two of the sequential analysis, the ALJ must determine whether the claimant has a "severe medically determinable physical or mental impairment."  20 C.F.R. § 404.1520(a)(4)(ii).  A finding of not severe is appropriate when an impairment, or combination of those impairments "does not significantly limit [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a).  The term "basic work activities" refers to "the abilities and aptitudes necessary to do most jobs," including functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling."  20 C.F.R. § 404.1521(b).

Here, as noted by the ALJ, the objective medical evidence of record did not reveal significant abnormalities in Winbush's right knee, right hip, left shoulder, and left hip.  (*See* Tr. at 13, 307-08, 501, 505, 731.)  Further, diagnostic images of her cervical and lumbar spine revealed only minimal abnormalities, and, throughout the record, upon examination the only remarkable findings were often tenderness and, at times, limited range of

5

motion of the lumbar spine.  (*See id.* at 13, 229, 234, 237, 242, 248, 259, 283, 294-95, 391, 393, 396, 398, 400, 402, 404, 406-07, 409, 411, 413, 419, 421, 423, 500, 507-08, 526-27, 568, 661-63, 742, 757-58, 760, 762, 764, 766, 768, 770, 772, 780, 782-83, 789, 803, 817, 819.)  Finally, despite suffering a cartilage tear to her left wrist, her symptoms improved after arthoscopic surgery.  (*See id.* at 13, 825-30, 869-71.)  In any event, in making his RFC determination, the ALJ considered Winbush's complaints of pain, including evidence from her treating sources of tenderness over her lumbar spine.  (*See id.* at 17-18.)  As the disability analysis continued and the ALJ considered claimant's severe and non-severe impairments in his RFC determination, any error at step two is, at most, harmless.  *See Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *4 (N.D.N.Y. Feb. 7, 2012); *see also Plante v. Astrue*, No. 2:11-CV-77, 2011 WL 6180049, at *4 (D. Vt. Dec. 13, 2011).

## B.   Listing 12.07

Next, Winbush contends that the ALJ failed to consider that her psychogenic non-epileptic seizure disorder is a listed mental impairment.  (*See* Dkt. No. 14 at 16-17.)  On the other hand, the Commissioner argues that the ALJ properly concluded that Winbush's impairments did not meet

6

or equal a listing level impairment. (*See* Dkt. No. 20 at 8-11.) Again, the court agrees with the Commissioner.

At the third step of the disability evaluation, the ALJ is required to determine whether the claimant's impairment(s) meet or equal an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *See* 20 C.F.R. § 404.1520(d). To establish disability under section 12.07, pertaining to somatoform disorders,[3] a claimant must meet or equal the criteria of both 12.07(A) and (B). *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.07. To satisfy the demands of 12.07(B), a claimant must prove that she suffers "at least two of the following: 1. [m]arked restriction of activities of daily living; or 2. [m]arked difficulties in maintaining social functioning; or 3. [m]arked difficulties in maintaining concentration, persistence, or pace; or 4. [r]epeated episodes of decompensation, each of extended duration." *Id.* § 12.07(B).

Here, the ALJ found that Winbush "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (Tr. at 14.) The ALJ explicitly considered listings

---

[3] Somatoform disorders are defined as "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.07.

11.02 and 11.03, pertaining to seizures, as well as 12.04 and 12.06, pertaining to affective disorders and anxiety related disorders. (*See id.*) He did not explicitly consider listing 12.07. (*See id.*) However, in evaluating listings 12.04 and 12.06, the ALJ explicitly found that Winbush's mental impairments "do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration." (*Id.*) Because a determination that Winbush did not possess the requisite marked limitations or episodes of decompensation precludes a finding that Winbush met listing 12.07, the ALJ's failure to explicitly analyze Winbush's impairments under that listing does not require remand. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("Where application of the correct legal standard could lead to only one conclusion, we need not remand." (citation omitted)).

Moreover, substantial evidence supports the ALJ's determination that Winbush suffered moderate restrictions in performing activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration persistence and pace, and no episodes of decompensation. (*See* Tr. at 13); *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982) (explaining that a listing determination may be upheld

8

despite "the absence of an express rationale," where "portions of the . . . decision and the evidence . . . indicate that [the ALJ's] conclusion was supported by substantial evidence"). In making his determination, the ALJ explicitly considered the results of Winbush's consultative psychiatric exam, Winbush's global assessment of functioning (GAF) score,[4] as assessed by her treating licensed mental health counselor and treating psychiatrist, and the opinion of the state agency medical consultant. (*See* Tr. at 12-13, 453, 670-74, 691-707.) With respect to activities of daily living, Winbush reported that she cooks, cleans, provides childcare, shops, attends to her personal hygiene, although she receives help washing her hair, drives a vehicle, watches television, listens to the radio, reads, writes book reviews, and crochets. (*See id.* at 47, 162-65, 661.) Notably, on April 9, 2010, she reported that she did not take her sleeping medication because she was busy "out and about doing things." (*Id.* at 838.) Further, although she reported difficulty being around crowds, Winbush also reported getting along well with friends and family some of the time. (*See*

---

[4] The GAF Scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Pollard v. Halter*, 377 F.3d 183, 186 n.1 (2d Cir. 2004). A 2010 assessment from Winbush's treating sources indicated a GAF of fifty-five. (*See* Tr. at 450-53.) A GAF score between fifty-one and sixty indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See* Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Rev. 2000).

*id.* at 166, 673.) Moreover, on examination, Winbush was repeatedly found to be pleasant, friendly, and cooperative, with good eye contact. (*See id.* at 452, 461, 464-65, 672.) Her attention and concentration and recent and remote memory were consistently found to be intact. (*See id.* at 229, 234, 248, 283, 385, 452, 672.) Finally, Winbush had not experienced an episode of decompensation during the relevant period. (*See id.* at 670); *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(C)(4).

C.      <u>Nonexertional Limitations</u>

Winbush also argues that the ALJ failed to "identify what limitations render [her] psychogenic non-epileptic seizures, depression and panic disorder severe." (Dkt. No. 14 at 18-19.) Further, Winbush contends that in determining her RFC, the ALJ failed to consider the nonexertional limitations attributable to her mental health impairments. (*See id.* at 19-20.)[5]  The court disagrees.

---

[5] According to Winbush, the ALJ also erred in concluding at step four that she could not perform her past relevant work, when the exertional level of such work is less than the ALJ's RFC finding. (*See* Tr. at 19-20.) The Commissioner counters that the ALJ did not err, as her nonexertional limitations prevented Winbush from performing her past relevant work. (*See* Dkt. No. 20 at 17.) Besides being unfavorable to her disability claim, Winbush's assertions regarding a deficiency in the step-four analysis do not require remand. *See Johnson v. Astrue*, No. 07-CV-647, 2009 WL 1650415, at *6 (W.D.N.Y. June 12, 2009) (explaining that failure to properly examine past relevant work is harmless when the ALJ makes a correct ruling at step five).

An ALJ's evaluation of a claimant's mental impairments must reflect his application of the "special technique" set out in 20 C.F.R. § 404.1520a, which necessitates his consideration of "four broad functional areas" that include: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3). The first three areas are rated on a five-point scale: "[n]one, mild, moderate, marked, and extreme." *Id.* § 404.1520a(c)(4). "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the [ALJ] generally will conclude that the claimant's mental impairment is not 'severe.'" *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1520a(d)(1)). If the ALJ determined that the claimant suffers a severe mental impairment that neither meets nor is equivalent in severity to any listing, he will then assess the claimant's RFC. *See* 20 C.F.R. § 404.1520a(d)(3). The mental RFC assessment used at steps four and five of the sequential evaluation process requires the ALJ to, among other things, engage in a more detailed assessment of various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in § 12.00 of the Listing of Impairments. *See* SSR

96-8p, 61 Fed. Reg. 34,474, 34,477 (July 2, 1996).

Here, as discussed above, the ALJ explained that he found Winbush to suffer moderate restrictions in performing activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration persistence and pace, and no episodes of decompensation. (*See* Tr. at 13.) Thus, he properly found that her mental health impairments were severe under the Regulations, and Winbush's assertion that he did not identify the limitations that made the impairments severe is false. *See* 20 C.F.R. § 404.1520a(d)(1).

In determining Winbush's RFC, the ALJ considered her mental impairments and concluded that she retained the ability to understand, carry out, and remember simple instructions, respond appropriately to supervisors, coworkers, and usual work situations, and to deal with changes in a routine work setting. (*See* Tr. at 15.) Due to her psychogenic non-epileptic seizure disorder, the ALJ limited Winbush from working at heights and operating dangerous machinery. (See *id.* at 15-16.) The ALJ based his determination on the results of the consultative mental status examination and the opinion of state agency medical consultant L. Hoffman, who opined that Winbush could understand and remember

instructions, sustain attention and concentration, respond and relate adequately to others, and adapt to changes. (*See id.* at 16, 670-74, 707.) In addition, the ALJ relied on the recommendation of physicians Michele Scully and Michel Berg that Winbush should not operate heavy machinery. (*See id.* at 16, 720-21.) The ALJ explained that, because Winbush testified that, despite her seizures, she continued to drive, he did not adopt Drs. Scully and Berg's recommendation that Winbush not drive. (*See id.* at 16, 47.) The ALJ also noted that Winbush's treatment for mental problems has been conservative and the mental status clinical findings in the record were largely benign. (*See id.* at 18, 450-53, 461-62, 463-65, 672.) The ALJ pointed out that Winbush testified that her medications helped some of her symptoms and her anti-depressant was being decreased. (*See id.* at 19, 43.) In fact, in April 2011, it was noted that her "passing out," was not "as prolific as it was before," although "it continue[d] to be bothersome." (*Id.* at 859.)

      Thus, the ALJ properly considered Winbush's nonexertional limitations attributable to her mental health impairments and his determination that she could not work at heights or operate heavy machinery, and was limited to unskilled work, is supported by substantial

13

evidence. *See* 20 C.F.R. § 404.1568.

## D. <u>Vocational Expert</u>

Lastly, Winbush contends that, due to the nonexertional limitations caused by her mental health impairments, the testimony of a vocational expert (VE) was required at step five of the sequential evaluation. (*See* Dkt. No. 14 at 20.) Again, the court disagrees.

In making a step-five ruling, an ALJ may rely on the Medical-Vocational Guidelines found in 20 C.F.R. pt. 404, subpt. P, App. 2, as long as the claimant's age, education, work experience, and RFC coincide with the criteria of a rule contained in those Guidelines. *See* 20 C.F.R. § 404.1569; *see also Calabrese v. Astrue*, 358 F. App'x 274, 275 n.1 (2d Cir. 2009). However, "if a claimant's nonexertional impairments 'significantly limit the range of work permitted by her exertional limitations' then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (quoting *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983)). In that case, the ALJ should consult with a VE before making a determination as to disability. *See id.*

14

Here, at step five, the ALJ concluded that, because she maintained the ability to meet the basic mental demands of unskilled work, and because the inability to be on unprotected elevations and near dangerous moving machinery does not significantly limit the range of work at all exertional levels, under the Medical Vocational Guidelines Winbush is not disabled. (*See* Tr. at 20-21); SSR 85-15, 1985 WL 56857 at *4, 8 (1985). As the ALJ's RFC determination was supported by substantial evidence, and Winbush's nonexertional limitations do not significantly limit the range of work permitted by her exertional limitations, consultation with a VE was not required by the Regulations. *See Bapp*, 802 F.2d at 605-06.

**E.    Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

### VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Winbush's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

August 30, 2013
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court